**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JAUMON MONDELL OKYERE, SR.,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 09-CV-335-TCK-TLW** |
| | ) | |
| **JAMES RUDEK, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

Before the Court is the amended petition for writ of habeas corpus (Dkt. # 32) filed by

Petitioner Jaumon Mondell Okyere, Sr., a state inmate appearing pro se.  Respondent filed a

response (Dkt. # 36) and provided the state court records (Dkt. ## 36, 37, 38, and 39) necessary for

adjudication of Petitioner's claims.  Petitioner filed a reply (Dkt. # 40) to Respondent's response.

For the reasons discussed below, the Court finds the amended petition shall be denied.

### BACKGROUND

**A.  Factual background**

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed

correct. Following review of the record, including the trial transcripts and other materials submitted

by the parties, the Court finds the factual summary by the OCCA is adequate and accurate.

Therefore, the Court adopts the following summary as its own.

> Melonie Totty and Appellant had been in a relationship with each other for
> several years prior to February and early March of 2005.  During these months they
> were separated and Totty began seeing another man, Richard Briggs.   When
> Appellant found out that Totty was seeing Briggs, he became angry and told her that
> he was going to kill Briggs. On March 16, 2005, Appellant told Totty to call Briggs
> to set up a meeting with him.  Appellant wanted Totty to arrange to pick up Briggs
> and drive him to a location near Appellant's mother's house where Appellant would
> be waiting for them.  Totty tried several times to reach Briggs by telephone but

Briggs did not answer her calls. When Totty was unable to reach Briggs, Appellant pointed his gun at her and threatened to kill her and her family. After Appellant calmed down, he and Totty went to her residence where they went to sleep.

The next day, on March 17, 2005, after Totty got off work at 4:00 p.m., she met Appellant at the apartment of mutual friends, Melvin Matthews and Jennifer Morrison. While there, Appellant was in possession of a red duffle bag in which he carried a Mac 11 nine millimeter semiautomatic gun. He continued to ask Totty if she called Briggs. Totty called Briggs and eventually spoke with him. She told him that she wanted to meet him that night and Briggs agree[d] to call her back. After Totty and Appellant left Matthews' and Morrison's apartment, they went to Appellant's sister Shamika's apartment. While at Shamika's apartment, Totty noticed that the gun Appellant carried in his red duffle bag had a blue towel wrapped around the front of it. At about midnight, Briggs called Totty back and the two made plans to meet.

Totty and Briggs met at a McDonald's at about 1:00 a.m. on March 18, 2005. Pursuant to Appellant's directive, Totty told Briggs that her friend's boyfriend's car had broken down and she needed to help him. Briggs had Totty follow him to his house where he dropped off his car and got into Totty's car, bringing with him his five month old daughter who was strapped into a child car seat. Before they went to 'assist' Appellant, they stopped at a convenience store where Briggs purchased some juice, Grandma's cookies and blunts. When Briggs got back into Totty's car, she drove to a location on 76th Street North where Appellant had pulled his car to the side of the road. The hood was up and hazard lights were flashing to make it appear that the car had broken down. Totty stopped by Appellant's car and Appellant got into the backseat of her car carrying with him his red duffle bag.

Appellant directed Totty to turn on Pittsburg and then pull into a circle drive around an oil well. When she stopped, Appellant got out of the car, opened the front passenger door and pointed the gun, still wrapped in a blue towel, at Briggs. He ordered Briggs out of the car and moved him toward the front of the car where he shot him several times. He then got back in the car and told Totty to take him back to where the car he was driving was parked by the side of the road. After this, Appellant changed out of his clothes and discarded them in a trash can, he put Briggs' baby, still in its car seat into the back of a pickup parked in an apartment parking lot, and he cleaned and disassembled his gun which he also discarded. Totty noticed that the towel wrapped around the gun looked burnt.

Briggs' body was discovered at around 6:00 a.m. on March 18, 2005. Blue cloth fibers were found on his face and within the blood pool near his head. A package of Grandma's cookies was also found near his body. Six nine millimeter shell casings were found at the scene. Briggs had been shot thirteen times and it was determined that he died from multiple gunshot wounds.

2

(Dkt. # 36, Ex. 3 at 1-3 (footnote omitted)).[1]  In a footnote of the direct appeal opinion, the OCCA wrote that "[t]he baby was discovered at around 5:30 in the morning when an occupant of the apartment complex heard it crying as he was walking out to his car to leave for work.  It was very cold and the child was uncovered but otherwise unharmed."  Id. at 3 n.1.

### B.  Procedural background

Based on those events, Petitioner and his co-defendant, Melonie Totty, were charged in Tulsa County District Court, Case No. CF-2005-1593, with First Degree Murder (Count I). A second page alleged that Petitioner had three (3) prior felony convictions. An amended information added a second charge against Petitioner: Child Neglect (Count II).  Totty agreed to cooperate with the State and was the State's primary witness against Petitioner. At the conclusion of a jury trial, Petitioner was found guilty as charged. On September 25, 2006, Petitioner was formally sentenced in

---

[1]Petitioner testified in his own defense at trial and told the jury a different version of the events culminating in Briggs' murder. See Dkt. #s 37-5 and 37-6. Petitioner testified that he was a drug dealer.  See Dkt. # 37-5, Tr. Trans. at 854.  He claimed that he had 6-7 people working for him and that he sold about 70 pounds of marijuana per month in the Tulsa area. Id. at 855. A few days before the murder, Petitioner learned from Totty that Briggs had stolen 30 pounds of marijuana, worth $144,000, from Petitioner's secret storage site. Id. at 861, 869.  Petitioner was "pissed off," id. at 871, and decided he would get the marijuana back from Briggs by subjecting him to "old school" torture, id. at 873. He admitted that during the early morning hours of March 18, 2005, he directed Totty and others, including his drug dealing employee, Melvin Matthews, a member of the Hoover Crips gang, to take Briggs out to a site near his mother's house to beat him into confessing where he had stashed the stolen marijuana. Id. at 887-912. Petitioner claimed he was not present at the scene, id. at 890, but he orchestrated the events from his sister's house using two different phones, id. at 887. Petitioner claimed that while he directed his crew to torture Briggs, he had instructed them "never to kill." Id. at 917. He denied that his treatment of Briggs was the result of jealousy over Briggs' involvement with Totty. Id. at 918. After Petitioner testified, the State called Jeff Rose, a regional performance manager for U.S. Cellular, as a rebuttal witness. See Dkt. # 37-6, Tr. Trans. at 1026.  Mr. Rose testified about records for Petitioner's cell phone usage during the period of interest, including the location of cell phone towers involved in the transmission of the calls.  Id. at 1029. Mr. Rose testified that, in his opinion, Petitioner's mobile phone was not stationary, but was traveling around town during the early morning hours of March 18, 2005. Id. at 1041.

accordance with the jury's recommendation to life imprisonment without the possibility of parole on Count I, and to twenty-five (25) years imprisonment on Count II, with the sentences ordered to be served consecutively. On October 2, 2006, Totty pled guilty to the lesser included offense of Second Degree Murder and was sentenced to thirty (30) years imprisonment, with all but twenty (20) years suspended. After initially being represented by retained counsel, Kathy Frye, Petitioner was represented at trial by Allen Malone, an assistant public defender.

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals (OCCA). On direct appeal, Petitioner was represented by attorney Stuart Southerland. Petitioner raised the following propositions of error:

Proposition 1: It was error for the district court to deny the application of the Tulsa County Public Defender's Office to withdraw based upon a conflict of interest.

Proposition 2: It was reversible error to repeatedly grant the State's motions to continue Appellant's jury trial setting over his objection.

Proposition 3: The State failed to present sufficient evidence corroborating Melonie Totty's testimony. In the absence of sufficient corroborating accomplice testimony, Appellant's conviction(s) must be reversed.

Proposition 4: The jury was improperly instructed on the offense of child neglect. A critical element was omitted from the instruction, requiring the reversal of Appellant's conviction in Count II.

Proposition 5: It was reversible error to excuse jurors for cause without inquiry as to why they felt that they could not be fair.

Proposition 6: The jury in Appellant's case was improperly instructed that Appellant's witnesses had given prior statements inconsistent with their testimony at trial. No "prior inconsistent statement" instruction should have been given.

Proposition 7: The trial court improperly permitted a representative of U.S. Cellular to testify beyond his field of expertise.

Proposition 8: Appellant received ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

4

Proposition 9: The accumulation of error in this case deprived Appellant of due process of law, necessitating reversal of his convictions pursuant to the Fourteenth Amendment to the United States Constitution.

(Dkt. # 36, Ex. 1).   On December 17, 2007, in Case No. F-2006-1055, the OCCA entered its unpublished opinion affirming Petitioner's Judgment and Sentence on Count I, but reversing with instructions to dismiss the Judgment and Sentence on Count II. See Dkt. # 36, Ex. 3.

On April 30, 2009, Petitioner filed his federal petition for writ of habeas corpus (Dkt. # 1). In response to the petition, Respondent filed a motion to dismiss, alleging that the petition was a "mixed petition," containing both exhausted and unexhausted claims. By Opinion and Order filed January 21, 2010 (Dkt. # 31), the Court agreed that the petition was subject to dismissal as a "mixed petition." However, Petitioner was afforded the opportunity to file an amended petition, containing only exhausted claims.  See Dkt. # 31.  On January 28, 2010, Petitioner filed his amended petition (Dkt. # 32).  He identifies the following grounds of error:

Ground 1: Ineffective assistance of counsel violating the Petitioner's 6th and 14th Amendment rights. (Proposition 9, supporting brief).

Ground 2: Petitioner was denied his 6th Amendment right to have conflict free counsel, it was error for the judge to deny the application of the Tulsa County Public Defender's Office to withdraw based upon a conflict of interest. (Previously proposition 13 in supporting brief).

Ground 3: It was reversible error to repeatedly grant the State's motions to continue Appellant's jury setting over his objection. (Previously proposition 14, supporting brief).

Ground 4: It was reversible error to excuse jurors for cause without inquiring as to why they felt that they couldn't be fair. (Previously proposition 15 in supporting brief).

Ground 5: The jury in Appellant's case was improperly instructed that Appellant's witnesses had given prior statements inconsistent with their trial testimony. No prior inconsistent statement instructions should have been given.

5

Ground 6: The trial court improperly permitted a representative of U.S. Cellular to testify beyond his field of expertise.

Ground 7: Accumulation of error.

(Dkt. # 32). In response to the amended petition, Respondent argues that Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d).  See Dkt. # 36.

### *ANALYSIS*

#### A.  Exhaustion/Evidentiary hearing

As an initial matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b). See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner presented his habeas claims raised in the amended petition to the OCCA on direct appeal. Therefore, the exhaustion requirement is satisfied.

The Court also finds that an evidentiary hearing is not warranted as Petitioner has not met his burden of proving entitlement to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000); Miller v. Champion, 161 F.3d 1249 (10th Cir. 1998).

#### B.  Claims adjudicated by the OCCA

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court

6

applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002). Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

In this case, the OCCA adjudicated Petitioner's grounds for habeas corpus relief on direct appeal. Therefore, the claims will be reviewed pursuant to § 2254(d).

### 1. Trial court erred in denying motion to withdraw (ground 2)

As his second ground of error, Petitioner asserts that the trial court improperly denied the motion to withdraw filed by the Tulsa County Public Defender's Office. See Dkt. # 32. The record reflects that Petitioner's co-defendant, Melonie Totty, was initially represented by Don Palik, a Tulsa County Assistant Public Defender. Petitioner was initially represented by retained counsel, Kathy Fry. After Petitioner's preliminary hearing, Totty hired private counsel and Kathy Fry withdrew from representing Petitioner. The trial judge then appointed Palik to represent Petitioner. However, Palik filed a motion to withdraw, citing a conflict of interest resulting from his prior representation of Petitioner's co-defendant. The trial court allowed Palik to withdraw, but ordered the Tulsa County Public Defender's Office to continue to provide representation for Petitioner. Petitioner and the Tulsa County Public Defender's Office objected, but the trial court ruled that Allen Malone, the Assistant Public Defender appointed to represent Petitioner, was not prevented from doing so by a conflict of interest.

On direct appeal, Petitioner argued, as he does in his habeas petition, that the trial court's ruling resulted in the denial of his Sixth Amendment right to effective assistance of counsel. In rejecting this claim on direct appeal, the OCCA cited, *inter alia*, Wood v. Georgia, 450 U.S. 261, 271, (1981), Glasser v. United States, 315 U.S. 60, 70 (1942), and Holloway v. Arkansas, 435 U.S. 475, 482 (1978), and found as follows:

> [T]he trial court took adequate steps to ascertain whether the risk of a conflict of interest was too remote to warrant separate counsel and the record supports the court's decision not to appoint counsel outside the public defender's office. We cannot conclude either that an actual conflict of interest adversely affected Appellant's lawyer's performance, that an actual, relevant conflict existed during the proceedings, or that there was a substantial possibility that a conflict of interest affected Appellant's lawyer's representation. Appellant's counsel at trial prosecuted the defense with competence and vigor. Appellant was not denied his constitutional right to effective assistance of counsel.

(Dkt. # 36, Ex. 3 at 8).

The Court finds Petitioner has failed to demonstrate that the OCCA's rejection of this claim on direct appeal was contrary to or an unreasonable application of Supreme Court law as required by 28 U.S.C. § 2254(d). In order to establish a violation of the Sixth Amendment based on a conflict of interest, "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). Where the defendant makes a timely objection pointing out a conflict of interest, prejudice is presumed if the trial court fails to make an adequate inquiry into the situation and take appropriate steps. Selsor v. Kaiser, 22 F.3d 1029, 1032-33 (10th Cir. 1994) (citing Holloway, 435 U.S. at 484). "Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests'. . . ." Strickland v. Washington, 466 U.S. 668, 692 (1984) (quoting Cuyler, 446 U.S. at 350). The mere possibility of a conflict of interest "is insufficient to impugn a criminal

8

conviction." <u>Cuyler</u>, 446 U.S. at 350. Furthermore, to demonstrate a Sixth Amendment violation where the trial court failed to inquire into potential conflict of interest about which it knew or reasonably should have known, the defendant has to establish that this conflict of interest adversely affected counsel's performance. <u>Mickens v. Taylor</u>, 535 U.S. 162 (2002) (capital case involving alleged conflict of interest resulting from defense attorney's representation of defendant's victim at time of murder).

In this case, the trial court did not ask the Tulsa County Public Defender's Office to provide concurrent representation to Petitioner and his co-defendant. Assistant Public Defender Palik had withdrawn from representing Totty and she had retained counsel when the need arose to appoint counsel for Petitioner. The record reflects that Petitioner himself wrote a letter to the trial judge requesting that the Tulsa County Public Defender's Office have no role in his representation because Assistant Public Defender Don Palik had previously provided representation for his co-defendant Totty. <u>See</u> Dkt. # 37-1, Hr'g Trans. at 2. The trial judge held a hearing to hear argument regarding the alleged conflict of interest. <u>Id.</u> At that hearing, Pete Silva, Tulsa County Public Defender, told the trial judge that while he understood Petitioner's concerns, his office would nonetheless "vigorously represent him, that we'll have no mixed allegiances, that Mr. Palik will have nothing to do with this case, and it has been assigned, in fact, to a lawyer, while not new to the practice of law, is new to our office, who certainly knows Mr. Palik but has not been working with Mr. Palik and in fact was not even in our office when the arrangements with the co-defendant were made in this case." <u>Id.</u> at 3-4.  Petitioner was afforded the opportunity to state his position, <u>see id.</u> at 4, and he averred that, as a result of Totty's decision to testify against him, he could not trust attorneys from the Public Defender's Office. <u>Id.</u> After listening to Petitioner's explanation regarding the

9

alleged conflict of interest, the trial judge denied Petitioner's request, finding that "the fact that somebody is in that same Public Defender's Office doesn't cause a conflict as to everyone." Id. at 5.  Based on Mr. Silva's assurances, the trial judge ruled that the Tulsa Public Defender's Office would continue to provide representation for Petitioner. Id.

Based on that record, the Court finds Petitioner has failed to demonstrate entitlement to habeas relief under § 2254(d).  After being alerted to a potential conflict of interest, the trial judge held a hearing and made an inquiry adequate to evaluate the alleged conflict of interest.  Therefore, prejudice is not presumed.  Petitioner has not demonstrated that his attorney actively represented conflicting interests.  Because nothing in the record suggests that the OCCA's denial of relief on this claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court, habeas corpus relief shall be denied on this claim.

### 2.  Trial court's grant of State's motion for a continuance of trial setting (ground 3)

As his third proposition of error, Petitioner claims it was reversible error for the trial court to grant the State's October 3, 2005, motion for a continuance of the jury trial setting over his objection.  See Dkt. # 32. Petitioner believes that because the State failed to file a written motion for a continuance, as required by Okla. Stat. tit. 12, § 668, the trial court committed reversible error. Based on the timing of the request for a continuance coupled with the status of his representation by Ms. Fry, Petitioner argues that "had the case been tried on time and schedule the cellphone records would have been [in]admissible and no conflict of interest would have ever existed with the Public Defender." Id. Petitioner cites to an "Application to Endorse Witness on Information," filed by the prosecution on November 4, 2005, see Dkt. # 37-8, O.R. at 128-29, or after being granted a continuance on October 3, 2005, to demonstrate that he was prejudiced by the trial court's ruling.

10

In that application, the State sought leave to endorse the custodians of records for T-Mobile, U.S.

Cellular, and Cricket Communications, for the purpose of authenticating cell phone records provided

to the defense in discovery.  The OCCA rejected this claim, finding as follows:

> . . . Appellant argues that it was reversible error for the trial court to grant the State's motions for continuance over his objection because the State failed to properly file written motions as is required by 12 O.S.2001, § 668.  Section 668 does impose procedural requirements for requesting continuances on account of the absence of evidence.  However, the overarching concern is whether the trial court's grant or denial of a continuance impinges on a substantial right of the accused.  20 O.S.2001, § 2001.1.  "Unless a procedural failure results in a miscarriage of justice or constitutes a substantial violation of appellant's right's [sic] this court cannot set aside a verdict."  *Hunnicutt v. State*, 1988 OK CR 91, ¶ 7, 755 P.2d 105, 109.
>
> Although [the] record indicates that the trial was continued several times, and Appellant complains about the granting of more than one motion for continuance, only one continuance, that granted on October 3, 2005, can fairly be inferred to have been requested on account of the absence of evidence.  Accordingly, only this continuance was subject to the procedural requirements of section 668. Even if the trial court erred in granting the continuance on October 3, 2005, this error cannot be found to have resulted in a miscarriage of justice or a substantial violation of Appellant's rights.  While Appellant claims he was prejudiced by the grant of additional time to the State for the purpose of securing cell phone records, Appellant's assertion of prejudice is speculative, at best.  It is likely that the evidence the State apparently sought extra time to produce would have been forthcoming and admissible either sponsored through a previously endorsed witness or in rebuttal. Appellant's additional claim of prejudice based upon his alleged conflict of interest is without merit in light of discussion above in Proposition I.  This argument warrants no relief.

(Dkt. # 36, Ex. 3 at 9).

Petitioner fails to demonstrate how the OCCA's decision was an unreasonable application

of Supreme Court law. See 28 U.S.C. § 2254(d). His argument is premised upon an alleged violation

of state procedural law by the trial court. "[F]ederal habeas corpus relief does not lie for errors of

state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991); see also Hooks v. Workman, 606 F.3d 715,

748 (10th Cir. 2010). Moreover, even if the trial court erred in granting the State's request for a

continuance without requiring compliance with Okla. Stat. tit. 12, § 668, the Court agrees with the

11

OCCA that Petitioner has not demonstrated that the ruling resulted in a miscarriage of justice or a substantial violation of Appellant's rights.

To the extent Petitioner's claim of error rises to the level of a constitutional violation, it is a trial error, analyzed under the harmless error standard from Brecht v. Abrahamson, 507 U.S. 619, 638 (1993).  See Herrera v. Lemaster, 301 F.3d 1192, 1199 (10th Cir. 2002). That standard "requires reversal only if [the error] had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 631 (quotation omitted).  Petitioner's allegation of prejudice resulting from the belated endorsement of records custodians is speculative. In light of the evidence presented at trial, the Court cannot find that the continuance, even if granted without requiring compliance with state law, had a "substantial and injurious effect or influence in determining the jury's verdict." Id.  Although the evidence demonstrating the location of Petitioner's cell phone at the relevant times was particularly damaging since it refuted Petitioner's testimony that he was at his sister's house at the time of the shooting, the testimony of Mr. Rose was offered by the State in rebuttal and, therefore, admissible regardless of the timing of the State's endorsement. See Davis v. State, 103 P.3d 70, 76 (Okla. Crim. App. 2004) (affirming that, in general, the State is not required to endorse its rebuttal witnesses).  Furthermore, the Court has addressed above Petitioner's claim that the trial court erred in denying a motion to withdraw the Tulsa County Public Defender based on an alleged conflict of interest with his attorney, an Assistant Tulsa County Public Defender. Petitioner has not demonstrated that any error resulting from the trial court's grant of a continuance had a substantial and injurious effect or influence in determining the jury's verdict. The OCCA's denial of relief on this claim was not an unreasonable application of Supreme Court law. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas corpus relief on this issue.

12

### 3.  Prospective jurors improperly excused for cause (ground 4)

As his fourth ground of error, Petitioner claims that prospective jurors were dismissed for cause without sufficient inquiry or rehabilitative efforts by the trial judge. See Dkt. # 32. Specifically, he complains that prospective jurors Phillips, Jones, Magoon, and prospective alternate juror Johnson were excused for cause after they said they could not be impartial, and that prospective juror Khan was dismissed for cause after he was not candid about a health problem that could interfere with his ability to sit on the jury. Id. Petitioner asserts that follow up questions should have been asked.  Id. On direct appeal, the OCCA ruled as follows:

> Appellant complains that the trial court erred in excusing for cause four prospective jurors and one alternate juror.  He argues specifically that none of the excused jurors provided a sufficient basis upon which the trial court could properly determine that they were unable to perform their duties under the law.  The record reflects that three of the prospective jurors stated that they would be unable to listen fairly to the evidence, follow the instructions and reach a fair and impartial verdict. The other potential juror appeared to have been less than candid about health problems that could affect his ability to sit as a juror and the alternate juror told the trial court that he, too, could not follow the law.   Neither the prosecutor nor defense counsel objected to the excusal of any of the prospective jurors.  No did they seek to inquire further of the prospective jurors.
>
> Appellant fails to establish that these dismissals were erroneous and cites no relevant authority in support of his claim.  He does not allege that any juror who served on his jury was unfair or biased against him; and he totally fails to establish any prejudice.  This Court has held that the decision whether to excuse a juror for cause is within the trial court's discretion. Appellant fails to show the trial court abused its discretion excusing these prospective jurors for cause and this proposition is denied.

(Dkt. # 36, Ex. 3 at 14 (citation omitted)).

The Sixth Amendment, as applicable to the states through the Fourteenth Amendment, and principles of due process guarantee a criminal defendant in state court an "impartial jury." Ristaino v. Ross, 424 U.S. 589, 595 n.6 (1976) (citations omitted); Ross v. Oklahoma, 487 U.S. 81, 85 (1988). "[T]he Constitution presupposes that a jury selected from a fair cross section of the

community is impartial, regardless of the mix of individual viewpoints actually represented on the jury, so long as the jurors can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case." <u>Lockhart v. McCree</u>, 476 U.S. 162, 184 (1986). Any claim that the jury was impartial must focus on the jurors who ultimately sat. <u>Ross</u>, 487 U.S. at 86. The Supreme Court has stressed that the trial court is granted wide discretion in conducting voir dire in areas of inquiry that might tend to show juror bias. <u>Mu'Min v. Virginia</u>, 500 U.S. 415, 427 (1991). "Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges." <u>Id.</u> at 431.

In this case, the record reflects that the trial court had sound reasons to dismiss the prospective jurors for cause. <u>See</u> Dkt. # 37-3, Tr. Trans. at 171, 235, 317, 318, 345. Significantly, Petitioner never suggests that any of the jurors who heard his case was not impartial. Because the constitutional inquiry focuses on the jurors who ultimately sat, Petitioner has failed to state a constitutional deprivation. He is not entitled to habeas corpus relief on this claim.

### 4. Instructional error (ground 5)

In ground 5 of his petition, Petitioner argues that the trial judge improperly issued a prior inconsistent statement instruction regarding the testimony of three defense witnesses. In rejecting this claim on direct appeal, the OCCA ruled as follows:

> He asserts that this instruction was not warranted because there was little evidence presented that these witnesses had made prior inconsistent statements. The determination of which instructions will be given to a jury is a matter entrusted to the discretion of the trial court and absent an abuse of discretion, this Court will not reverse if the instructions as a whole accurately state the applicable law. Upon review of the record before this Court, we find that the evidence was sufficient to warrant the limiting instruction on the proper use of impeachment evidence regarding each of these defense witnesses. We do not find that the trial court abused its discretion in so instructing.

(Dkt. # 36, Ex. 3 at 15 (citation omitted)).

It is well established that "[a]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law.'" Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997) (quoting Long v. Smith, 663 F.2d 18, 23 (6th Cir. 1981)); see also Maes v. Thomas, 46 F.3d 979, 984 (10th Cir. 1995) ("A state trial conviction may only be set aside in a habeas proceeding on the basis of erroneous jury instructions when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial."). Stated another way, "'[h]abeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense.'" Shafer v. Stratton, 906 F.2d 506, 508 (10th Cir. 1990) (quoting Brinlee v. Crisp, 608 F.2d 839, 854 (10th Cir. 1979)).

Petitioner has failed to demonstrate that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, clearly established federal law, or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented at trial. 28 U.S.C. § 2254(d)(1),(2). Petitioner complains that the trial testimony of defense witnesses Shamika Smith, his sister; Damita Smith, his mother; and Heather Holland, his ex-wife, was not inconsistent with any prior statements by those witnesses. However, contrary to Petitioner's allegations, the record reflects that Shamika Smith admitted that her testimony concerning the events of March 17 and 18, 2005, was "probably not" the same as what she initially told law enforcement investigators. See Dkt. # 37-5, Tr. Trans. at 832. She denied having previously stated that Melonie Totty told her on March 17, 2005, that Petitioner wanted her to arrange to set up the victim, Richard Briggs, to kill

15

him. Id. Later in her testimony, she admitted that she had told Detective Cole that Melonie Totty told

her on March 17, 2005, that Petitioner wanted her to arrange a set up with the victim to beat him up.

Id. at 837-38.   Similarly, Damita Smith admitted that the statement she gave to Petitioner's first

attorney, Kathy Fry, did not mention that she saw Petitioner at Shamika's apartment at 3:08 a.m. on

March 18, 2005, although that information would have provided an alibi for Petitioner. Id. at 794-

95.   Lastly, Ms. Holland admitted that when she first talked to police she could not remember

whether Petitioner had her car on March 17, 2005. Id. at 759-60. At trial, she remembered that

Petitioner had her car on March 17, 2005. Id. at 760. In addition, she admitted that answers she gave

to investigators about Petitioner's whereabouts on March 17, 2005, were not the same answers given

that day at trial. Id. 769-70. Based on that record, the Court agrees with the OCCA's determination

that there was no abuse of discretion in the trial court's issuance of the prior inconsistent statement

instructions since the issuance of the instructions was justified. Upon careful review of the record,

the Court finds that the state court's issuance of the prior inconsistent statement instructions did not

deprive Petitioner of fundamental fairness or violate due process. See Nguyen, 131 F.3d at 1357.

Petitioner is not entitled to habeas relief under § 2254(d).

**5. Improper admission of expert testimony (ground 6)**

As proposition 6, Petitioner claims that the trial court improperly permitted a representative

of U.S. Cellular to testify beyond his field of expertise.  The testimony of Jeff Rose was offered by

the State as rebuttal to Petitioner's testimony that he was at his sister's apartment when Briggs was

shot.  In denying this claim on direct appeal, the OCCA found as follows:

> Expert opinion testimony is based on "scientific, technical, or other
> specialized knowledge" and can be provided only by a witness who is "qualified as
> an expert," in the field at issue, "by knowledge, skill, experience, training, or
> education." 12 O.S.2001, § 2702. Admission of expert testimony is within the trial

16

court's discretion. We find that the trial court did not abuse its discretion in allowing Mr. Rose, an engineer with six years experience as a regional performance manager at U.S. Cellular, to give opinions about cell tower routing as he was qualified to do so based upon his specialized knowledge of such.

(Dkt. # 36, Ex. 3 at 16 (citations omitted)).

As discussed above, "it is not the province of a federal habeas court to reexamine state court determinations on state-law questions." Estelle, 502 U.S. at 67–68; see also Hooks, 606 F.3d at 748. In conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 67-68. "In a habeas proceeding claiming a denial of due process, 'we will not question the evidentiary . . . rulings of the state court unless [the petitioner] can show that, because of the court's actions, his trial, as a whole, was rendered fundamentally unfair.'" Maes v. Thomas, 46 F.3d 979, 987 (10th Cir. 1995) (quoting Tapia v. Tansy, 926 F.2d 1554, 1557 (10th Cir. 1991)). "[W]e approach the fundamental fairness analysis with 'considerable self-restraint.'" Jackson v. Shanks, 143 F.3d 1313, 1322 (10th Cir. 1998) (quoting United States v. Rivera, 900 F.2d 1462, 1477 (10th Cir. 1990) (en banc)). A proceeding is fundamentally unfair under the Due Process Clause only if it is "shocking to the universal sense of justice." United States v. Russell, 411 U.S. 423, 432 (1973) (internal quotation omitted).

After reviewing the trial transcripts, the Court finds that the OCCA's rejection of Petitioner's claim on direct appeal is neither contrary to, nor an unreasonable application of, these general principles. The OCCA's statement of the witness's qualifications to testify was accurate. The OCCA then interpreted and applied state law governing qualifications of expert witnesses. No constitutional violation is implicated by this claim. Furthermore, even excluding the cell phone evidence presented by Mr. Rose, the jury heard substantial evidence that Petitioner shot Briggs. Totty offered detailed testimony concerning the events surrounding the shooting. See Dkt. # 37-4,

17

Tr. Trans. at 437-548.  She testified that Petitioner carried a handgun wrapped in a blue towel, see id. at 467, and that, at the time of the shooting, after Petitioner lead Briggs away from the car, she heard a lot of gunshots, see id. at 467-69.  Timothy Shelton, Crime Scene Investigator for the Tulsa County Sheriff's Office, testified that the victim had blue cloth fibers attached to his face, beard, moustache, and shirt.  Id. at 400-03.  Jennifer Morrison, Melvin Matthews, Kimberly Bradfield, and Mardio Murphy all testified for the State and corroborated Totty's testimony that Petitioner carried a handgun in a red gym bag during the time period immediately preceding the shooting.  See id. at 566, 581-82, 607-08, 618.   Those witnesses also corroborated Totty's testimony concerning Petitioner's whereabouts preceding and following the shooting on March 18, 2005.  Id. at 570, 586, 616.  In light of the strength of the State's case against Petitioner, the Court finds that Petitioner has failed to demonstrate that his trial was fundamentally unfair as a result of Mr. Rose's testimony. Petitioner is not entitled to habeas corpus relief on this claim.  28 U.S.C. § 2254(d).

**6.  Ineffective assistance of counsel (ground 1)**

As his first ground of error, Petitioner argues that he was denied his right to effective assistance of counsel.  See Dkt. # 32.   Specifically, Petitioner claims that trial counsel was unprepared for trial; failed to contact and interview defense witnesses; failed to respond to phone calls; put witnesses on the stand without knowing what would be said; failed to correct errors in summarized witness statements prepared by former defense counsel, Kathy Fry; referred to Petitioner as a drug dealer; failed to investigate and provide evidence during discovery; failed to object to the exclusion of "colored jurors" for cause; failed to object to the prosecutor's referencing Petitioner as "O.J."; failed to object to victim's family having contact with jurors; failed to object to in-court identification by a jail house informant; and failed to object to jury instructions regarding

inconsistent statements made by defense witnesses.  On direct appeal, the OCCA denied relief on

this claim, citing Strickland v. Washington, 466 U.S. 668, 687 (1984), and finding as follows:

> We found in Proposition VI that the trial court did not abuse its discretion in giving
> the instructions on prior inconsistent statements and we found in Proposition VII that
> the trial court did not abuse its discretion in allowing Mr. Rose to testify as an expert.
> Thus, as to these two alleged failings of counsel Appellant has not shown that
> counsel's performance was deficient . . . As to the remaining allegations, we find that
> even if counsel was deficient for failing to interview certain witnesses, secure taped
> statements and vior [sic] dire the dismissed jurors more throughly, there has been no
> showing that this deficient performance deprived Appellant of a fair trial with a
> reliable result.  Appellant has not shown a reasonable probability that, but for
> counsel's unprofessional error, the result of the proceeding would have been
> different.

(Dkt. # 36, Ex. 3 at 17-18).

As part of his direct appeal, Petitioner filed a "motion to remand for evidentiary hearing,"

under Rule 3.11(B)(3)(b), Rules of the Oklahoma Court of Criminal Appeals. See Dkt. # 36, Ex. 1.

The motion provided argument and evidence supporting Petitioner's claim of ineffective assistance

of counsel.  Id.  Attached to the motion are the affidavits of appellate counsel Stuart Southerland

(Dkt. # 36, Exs. A, C, and E, attached to Ex. 1), the affidavit of Heather Holland (Dkt. # 36, Ex. B

attached to Ex. 1), and a supplemental property receipt from the Tulsa County Sheriff's Office (Dkt.

# 36, Ex. D, attached to Ex. 1).  The OCCA denied Petitioner's motion for an evidentiary hearing,

stating that, "[t]o warrant an evidentiary hearing, Appellant must present this Court with clear and

convincing evidence of a strong possibility that counsel was ineffective for failing to identify or use

the evidence raised in the motion. Appellant's submitted material does not meet this standard." See

Dkt. # 36, Ex. 3 at 16 n.10.

To be entitled to habeas corpus relief on his alternative claim of ineffective assistance of

counsel, Petitioner must demonstrate that the OCCA's adjudication was an unreasonable application

19

of Strickland. Under Strickland, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland, 466 U.S. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88.  There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999). This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential." Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland and through the "deferential" lens of § 2254(d)).

Petitioner has failed to demonstrate that he is entitled to habeas corpus relief on his claims of ineffective assistance of counsel. First, for the reasons discussed in Parts B(3), (4), and (5), trial counsel did not perform deficiently in failing to object to (1) excusing jurors for cause, (2) the

instructions on prior inconsistent statements by defense witnesses, and (3) qualifying Mr. Rose as an expert witness. Even if counsel performed deficiently in failing to object in those instances, Petitioner has not satisfied the prejudice prong of the <u>Strickland</u> standard. In addition, based on review of the record and the evidence presented at Petitioner's trial, the Court finds that even if trial counsel performed deficiently in interviewing witnesses, failing to secure evidence provided to Ms. Fry, and otherwise failing to prepare for trial, Petitioner has not demonstrated that he was prejudiced by the deficient performance. Petitioner has failed to demonstrate that he was deprived of a fair trial with a reliable result, or that the result of his trial would have been different but for trial counsel's alleged deficient performance. He is not entitled to habeas corpus relief on this claim. 28 U.S.C. § 2254(d).

### 7. Cumulative error (ground 7)

As his seventh proposition of error, Petitioner claims that the errors during his trial combined to render his trial unfair, and that as a result, he is entitled to a new trial or sentence modification. <u>See</u> Dkt. # 32. Petitioner raised a claim of cumulative error on direct appeal. The OCCA ruled as follows:

> This Court has recognized that when there are "numerous irregularities during the course of [a] trial that tend to prejudice the rights of the defendant, reversal will be required if the cumulative effect of all the errors was to deny the defendant a fair trial." *DeRosa v. State*, 2004 OK CR 19, ¶ 100, 89 P.3d 1124, 1157, quoting *Lewis v. State*, 1998 OK CR 24, ¶ 63, 970 P.2d 1158, 1176. Upon review of Appellant's claims for relief and the record in this case we conclude that although his trial was not error free, any errors and irregularities, even when considered in the aggregate, do not require reversal because they did not render his trial fundamentally unfair or taint the jury's verdict.

(Dkt. # 36, Ex. 3 at 18).

In analyzing a cumulative error claim, the proper inquiry "aggregates all the errors that individually might be harmless [and therefore insufficient to require reversal], and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." United States v. Wood, 207 F.3d 1222, 1237 (10th Cir. 2000) (quotation omitted). Cumulative error analysis is applicable only where there are two or more actual errors. Workman v. Mullin, 342 F.3d 1100, 1116 (10th Cir. 2003). Cumulative impact of non-errors is not part of the analysis. Le v. Mullin, 311 F.3d 1002, 1023 (10th Cir. 2002) (citing Rivera, 900 F.2d at 1471). In this case, the Court did not find two or more actual errors. As a result, the Court finds no basis for a cumulative error analysis. Therefore, Petitioner has failed to demonstrate that the OCCA's rejection of this claim is contrary to, or an unreasonable application of, federal law as determined by the Supreme Court. 28 U.S.C. § 2254(d).  He is not entitled to habeas corpus relief on this ground.

## C.  Certificate of appealability

Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue. Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decision by the OCCA was debatable amongst jurists of reason.  See Dockins v. Hines, 374 F.3d 935 (10th Cir. 2004).  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently. A certificate of appealability shall be denied.

### CONCLUSION

After carefully reviewing the record in this case, the Court concludes that the Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. His amended petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED that** the amended petition for a writ of habeas corpus (Dkt. # 32) is **denied**. A separate judgment shall be entered in this matter.  A certificate of appealability is **denied**

DATED THIS 7th day of December, 2012.

TERENCE C. KERN
UNITED STATES DISTRICT JUDGE